IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | Criminal No. 11-122 |
| | ) | See Civil Action No. 13-470 |
| RICHARD SCOTT BLACKSTONE, | ) | |
| | ) | |
| Defendant/petitioner. | ) | |

MEMORANDUM OPINION

BLOCH, District J.

On November 21, 2011, Petitioner pled guilty to Count
Seven of the indictment, charging him with conspiring to possess
with the intent to distribute and distribute 5 kilograms or more
of a mixture and substance containing a detectable amount of
cocaine, contrary to 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), in
violation of 21 U.S.C. § 846. In connection with his plea,
Petitioner and the Government entered into a written plea
agreement which included, among other[1] things, a waiver of
certain appellate rights as well as a provision stating that

---

[1] The parties also stipulated that the type and quantity of
controlled substances attributable to Petitioner for purposes of
USSG § 2D1.1 was at least 5 kilograms but less than 15 kilograms
of cocaine, a quantity which included all relevant conduct. The
plea agreement further contained provisions allowing for a
sentence under the ten-year mandatory minimum if Petitioner
undertook and completed certain obligations to the satisfaction
of both the Government and Court.

1

Petitioner "waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence." The agreement further states that it:

> sets forth the full and complete terms and conditions of the agreement between [Petitioner] and the [Government], and there are no other agreements, promises, terms or conditions, express or implied.

Petitioner signed the agreement and confirmed at the plea hearing that he had agreed to the terms set forth therein. The terms of the agreement, including the appellate waiver, were reviewed for him by both the Government and the Court. After ensuring that Petitioner understood the terms of his agreement as well as the consequences of his appellate waiver and plea, the Court found that he had entered into the appellate waivers knowingly and voluntarily and accordingly accepted the plea.

On March 26, 2012, the final Presentence Investigation Report ("PIR") was filed, in which the probation officer concluded that Petitioner's guideline range was 151 to 188 months of imprisonment based on a total offense level of 29 and a criminal history category of VI. Petitioner's offense level was set by the drug stipulation contained in his plea agreement.

On April 3, 2012, Petitioner's counsel ("Counsel") filed a "Statement in Mitigation of Sentence" which stated that Petitioner had no objections to the sentencing factors contained in the PIR. Although Counsel did not take issue with the guideline calculation, he did argue that a "major downward variance" was warranted pursuant to 18 U.S.C. § 3553(a) because: (i) Petitioner was a drug addict and his involvement in the conspiracy was merely that of a "purchaser" and "user"; (ii) Petitioner's personal involvement in the conspiracy entailed smaller drug quantities than what was charged in the overall conspiracy; (iii) Petitioner's Category VI designation substantially over-represented the seriousness of his criminal history because his priors were the result of his addiction and involved relatively non-violent and less serious conduct as compared to other Category VI offenders; and (iv) Petitioner had maintained employment throughout his life, was working a lawful job at the time of the conspiracy, and had finally found family support from his girlfriend and child. See (Doc. No. 293).

On April 16, 2012, the probation officer filed an Addendum to the PIR setting forth her response to Petitioner's arguments in his sentencing memorandum. See (Doc. No. 303). Under the section entitled "Additional Information," the probation officer stated the following:

3

> **Defense counsel notified the probation officer**
> after he submitted his Statement in Mitigation of
> Sentence,that the defendant informed him that **he**
> **appealed the conviction identified in paragraph 36 of**
> **the [PIR], and that he was acquitted of the conduct.**
> The probation officer **verified that his claim is**
> **correct.** As such, **the points assigned to that**
> **conviction should be removed, making the total number**
> **of criminal history points 14, instead of 16.**
> Nevertheless, according to the sentencing table in
> U.S.S.G., Chapter 5, Part A, an offender with 14
> points is a Category VI offender.

Addendum to PIR (Doc. No. 303 at 2) (emphasis added).

On May 23, 2012, Counsel filed a "Supplemental Statement in Mitigation of Sentence" which, among other things,[2] reiterated Petitioner's argument that his involvement in the conspiracy was that of a "user only" and that "the quantities of his purchases never approached 5 to 15 kilos, the amount charged in the conspiracy Indictment." (Doc. No. 346).

At Petitioner's sentencing hearing on May 24, 2012, the Court agreed that a sentence outside the recommended guideline range and below the mandatory minimum was warranted, and it sentenced Petitioner to 75 months' imprisonment with a five-year term of supervised release to follow. The Court's decision to impose a below-guidelines sentence, however, was

---

[2] Counsel also argued that a downward variance was warranted based on the Government's motion that was filed on Petitioner's behalf and the fact that Petitioner's criminal history did not involve any prior drug-trafficking convictions. See (Doc. No. 346).

4

based on the Government's motion and not on the arguments advanced by Petitioner. Indeed, the Court specifically rejected the notion that any further reduction in sentence was justified based on the arguments in Petitioner's sentencing memorandums.[3]

In rejecting Petitioner's arguments, the Court squarely addressed Petitioner's contention regarding the small quantity of drugs he purchased and his lesser involvement in the conspiracy, stating that such an assertion was contrary to both: (i) the drug quantity he had voluntarily acknowledged responsibility for in his plea agreement and (ii) his agreement with the Government's summary of evidence at his plea hearing which established that he was involved in a conspiracy to distribute cocaine -- not just to possess it. See Sentencing Hearing Transcript (Doc. No. 373).

The judgment was entered on May 24, 2012, and, on May 30, 2012, Petitioner filed a notice of appeal with the Third Circuit Court of Appeals challenging his conviction and sentence. (Doc. No. 357). While Petitioner's case was pending on direct appeal, he filed his first motion pursuant to 28 U.S.C. § 2255. (Doc. No. 386). Finding that Petitioner had filed his motion prematurely, the Court, on January 2, 2013, dismissed the

_____

[3] The Court notes that the arguments made in the sentencing memorandums were reiterated at the sentencing hearing through Counsel's extensive argument.

motion without prejudice to be re-filed once Petitioner's direct appeal was resolved. (Doc. No. 388). On January 24, 2013, the Third Circuit issued its Mandate summarily dismissing the appeal based on the appellate waiver in Petitioner's plea agreement. (Doc. No. 391). On March 29, 2013, Petitioner filed the present Section 2255 motion, and, because the Court was aware of the waiver of the right to file a Section 2255 motion contained in his plea agreement, it ordered Petitioner to show cause as to why his motion should not be dismissed based on the waiver.

On April 22, 2013, Petitioner filed his response to the Court's Show Cause Order ("Order"). (Doc. No. 397). Instead of addressing the waiver issue as ordered, Petitioner identified new grounds of allegedly ineffective assistance and expanded on arguments already set forth in his original (timely) Section 2255 motion. See (id.). On September 30, 2013, Petitioner filed a "Motion to Supplement under U.S.C. Rule 15 to Add to 2255 Appeal to Show Reason of Ineffective Counsel" which provided more detail regarding one of the newly[4] identified grounds in

---

[4] The Court notes that, although Petitioner's response to the Order set forth new claims of ineffective assistance which were not included in his original (timely) motion, these new grounds were asserted within three months of the Third Circuit's Mandate and therefore are not considered untimely within the meaning of United States v. Thomas, 221 F.3d 430 (3d Cir. 2000) since they were raised well before the expiration of the one-year limitations period. Furthermore, because the Court immediately ordered Petitioner to show cause as to why his motion should not

Petitioner's response to the Court's Order. (Doc. No. 420).

Finally, on October 11, 2013, Petitioner filed another document

attempting to supplement his Section 2255 motion, claiming that

Counsel "failed to provide all evidence and discovery to

Plaintiff" thereby violating his "First, Fifth, and Sixth

Amendment rights."[5] (Doc. No. 421).

Section 2255 permits a prisoner sentenced by a federal

court to move the court that imposed the sentence to "vacate,

---

be dismissed, the Court did not issue a "Miller" order notifying
Petitioner that he had to file one all-inclusive petition and
that he was barred from filing successive petitions asserting
new claims. Thus, Petitioner did not have sufficient notice that
he was required to include all his claims in one petition, and
consequently, his response to the Order cannot fairly be
construed as a "second or successive petition" under the
Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").
For these same reasons, the Court also has considered the
argument in Petitioner's supplemental motion in making its
determination. See (Doc. No. 420). As noted earlier, the
argument in the supplemental motion is an expansion of the new
claim of ineffectiveness which Petitioner raised in his
response. Thus, the Court has considered all of Petitioner's
contentions in order to assure itself that no miscarriage of
justice would result by enforcing the appellate waiver.

[5] Although Petitioner claims that Counsel failed to provide him
with all the evidence against him, he offers no insight into
which evidence allegedly was withheld from him and further fails
to explain the impact that such evidence would have had on his
decision to plead guilty or how he was prejudiced by any alleged
error in this regard. Indeed, Petitioner advances nothing more
than one sentence in support of this claim, and as such, the
Court will not further entertain this vague and conclusory
allegation of ineffectiveness. See Thomas, 221 F.3d at 437
("[V]ague and conclusory allegations contained in a § 2255
petition may be disposed of without further investigation by the
District Court.").

set aside, or correct the sentence" where: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. See 28 U.S.C. § 2255(a). However, a criminal defendant may waive his right to file a motion under Section 2255 or to otherwise seek collateral relief. Such a waiver is valid if entered into "knowingly and voluntarily" unless it would work a "miscarriage of justice." United States v. Khattak, 273 F.3d 557, 558 (3d Cir. 2001); United States v. Mabry, 536 F.3d 231, 237-38 (3d Cir. 2008). A district court has an affirmative duty to conduct an evaluation of the knowing and voluntary nature of the waiver and to assure itself that its enforcement works no miscarriage of justice. See Mabry, 536 F.3d at 237-38.

Here, Petitioner clearly and unambiguously waived his right to file a motion under Section 2255 or to otherwise seek collateral relief, and the record demonstrates that the waiver is enforceable. Petitioner does not allege that he unknowingly or involuntarily entered into the appellate waiver, nor does he argue that enforcement of the waiver would work a miscarriage of justice. Indeed, although Petitioner raises numerous arguments

8

regarding Counsel's allegedly ineffective assistance, he does not allege that the waiver of his right to file a collateral attack itself was anything other than knowing or voluntary. Likewise, he does not claim that the *appellate waiver itself* was the product of ineffective assistance of counsel. The Third Circuit has explained that "a waiver does not 'become[ ] unenforceable simply because a defendant 'claims' . . . ineffective assistance.'" United States v. Akbar, 181 Fed. Appx. 283, 286-87 (3d Cir. 2006) (quoting United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)). To the contrary, a waiver may be invalidated "only 'if the record of the criminal proceeding revealed that the claim that the *waiver was the result of ineffective assistance of counsel* was meritorious.'" Akbar, 181 Fed. Appx. at 287 (quoting Monzon, 359 F.2d at 118-19) (emphasis added). Accordingly, the Court finds no basis to conclude that the waiver was anything other than knowing and voluntary. See Akbar, 181 Fed. Appx. at 286-87; United States v. Watkins, 2011 WL 2261059 (W.D. Pa. June 8, 2011); United States v. Fagan, 2004 WL 2577553, at *4, n.5 (E.D. Pa. Oct. 4, 2004).

To be sure, the Court questioned Petitioner extensively at his plea hearing regarding the waiver of his right to file a collateral attack as to his plea and sentence. After Petitioner confirmed that the Government had correctly

9

recited the terms of the plea agreement, the Court went over the appellate waiver provision for a second time and engaged in the following colloquy with Petitioner:

> The Court: Mr. Blackstone, do you understand that ordinarily you or the Government may have the right to appeal any sentence the Court imposes; however, the Court notes that in paragraph A11 of the plea agreement, you and the Government agreed that you would waive, that is, give up your right to take a direct appeal from your conviction or sentence subject to the following exceptions:
>
> First, if the United States appeals from the sentence, you may take a direct appeal from the sentence. **Do you understand that?**
>
> [Petitioner]: **Yes, Sir.**
>
> The Court: Secondly, you may also take a direct appeal from the sentence only on the following grounds:
>
> > First, if the sentence exceeds the applicable statutory limits set forth in the United States Code. **Do you understand that?**
>
> [Petitioner]: **Yes, Sir.**
>
> The Court: Secondly, the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines. **Do you understand that?**
>
> [Petitioner]: **Yes, Sir.**
>
> To repeat, by these provisions of the plea agreement, you are giving up the right to appeal both the validity of your plea of guilty and the legality of your sentence. **Do you understand that?**
>
> [Petitioner]: **Yes, Sir.**

The Court: Further, you have also waived the right
to file a motion to vacate sentence under Title
28, United States Code, Section 2255, and the
right to file any other collateral proceeding
attacking your conviction or sentence. **Do you
understand that?**

[Petitioner]: **Yes, Sir.**

The Court: The waivers you have entered into are
generally enforceable if entered into knowingly
and voluntarily unless they work a miscarriage of
justice. **Has anyone made a threat to you or
anyone else that has forced you to waive these
rights**?

[Petitioner]: **No, Sir.**

**Has anyone made any promise to you other than the
promises made in the plea agreement** that has
induced you to waive these rights?

[Petitioner]: **No, Sir.**

Change of Plea Transcript (Doc. No. 372 at 14-15) (emphasis

added). Thus, the Court questioned Petitioner at length

regarding his understanding of the appellate waiver and it found

-- based on his answers -- that he understood the consequences

of the waivers and that he entered into them knowingly and

voluntarily. See (id. at 15).

Moreover, no miscarriage of justice would occur as a

result of the enforcement of the waiver. As the Third Circuit

has explained, in determining whether there would be a

miscarriage of justice, the Court must consider factors such as

11

the clarity of the alleged error, its gravity, its character, the impact of the error on Petitioner, the impact of correcting the error on the Government, and the extent to which Petitioner acquiesced in the result. See Khattak, 273 F.3d at 563 (citing United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

After engaging in its own independent review of the record, and after considering the factors outlined in Khattak, the Court has assured itself that no miscarriage of justice will result by enforcing the collateral waiver. In so finding, the Court again notes that Petitioner himself does not argue that enforcement of the waiver would work a miscarriage of justice. Indeed, he does not address the waiver issue at all. However, as Petitioner does discuss his attorney's alleged ineffectiveness at length, the Court will assume that he is arguing that such ineffectiveness will result in a miscarriage.[6]

Petitioner's allegations of ineffective assistance can be summarized as follows:

(1) Counsel was uninterested in investigating the case because he had already determined that Petitioner was guilty and he was concerned only with forcing Petitioner to plead guilty which caused him to feel "misguided" and "misrepresented"; (2)

---

[6] Pro se pleadings are held to less stringent standards than formal pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972); Holley v. Department of Veterans Affairs, 165 F.3d 244, 247 (3d Cir. 1999).

Counsel failed to have the Government "clarify the facts" of his "relevant conduct" despite his request; (3) Counsel coerced him into pleading guilty by: (a) advising that the Court would "hang him" if he went to trial and lost, (b) promising him a five-year sentence in exchange for his plea, and (c) advising that he was a "prime candidate" for the Bureau of Prison ("BOP")'s 500-Hour Residential Drug Abuse Program ("RDAP") and would get a year off of his sentence if he participated; (4) Counsel failed to secure a plea agreement which included a stipulation to a lesser drug quantity and he "lied" by telling Petitioner he could not plead guilty to a lesser weight; (5) Counsel failed to argue at sentencing that: (a) the Government had to prove drug quantity beyond a reasonable doubt and (b) Petitioner's personal involvement in the conspiracy was not as extensive as his coconspirators; and (6) Counsel failed to challenge the conviction in § 36 of the PIR. See (Doc. Nos. 392, 397, and 420).

Unfortunately for Petitioner, all of his contentions are unsupported and/or directly contradicted by the evidence of record. Indeed, the first three grounds identified above are completely contradicted by the transcript from the change of plea hearing which establishes that: Petitioner had no problems communicating with Counsel and was satisfied with his

representation; he understood the nature of the charges and he knew the evidence[7] against him; he understood the terms[8] and consequences of his plea agreement; Counsel never made any promises or threats regarding any sentences in advising Petitioner to plead guilty, and Counsel did not misadvise him regarding RDAP. See (Doc. No. 372 at 5, 11, 19, 20-23). To be sure, Petitioner's allegation that Counsel coerced him into pleading guilty is belied by the following exchange with the Court at the plea hearing:

> Has anyone made any threat to you or to anyone else that has forced you to plead guilty?
>
> Has anyone made any promise other than the promises made in the plea agreement that induced you to plead guilty?
>
> Has anyone made any prediction or promise as to what your actual sentence will be other than what you have been told as a maximum sentence?
>
> Has anything I have said here today, other than what I have told you about the maximum sentence, suggested to you what your actual sentence will be?
>
> Have you been instructed by the Government attorney, your attorney, or anyone else to respond

---

[7] The Court notes that the Government did "clarify the facts of his relevant conduct" at the plea hearing when it provided a summary of the evidence against Petitioner after he admitted guilt. See (Doc. No. 392 at 5); (Doc. No. 372 at 20-23).

[8] When questioned by the Court, Petitioner confirmed that the Government had accurately summarized the terms in the agreement and further confirmed that those were, in fact, the terms he had agreed to. (Doc. No. 372 at 13).

untruthfully to any question concerning a promised sentence?

(Doc. No. 372 at 19). Petitioner responded in the negative to all of these questions.

With respect to Counsel's alleged ineffectiveness in alerting him to the BOP's RDAP program, Petitioner fails to explain how Counsel's advice in this regard was unreasonable or inaccurate in some way. At sentencing, Counsel did request that the Court make a BOP recommendation for Petitioner's participation in the RDAP program, and the Court included that recommendation in the judgment. Of course, the ultimate determination as to which inmates participate in the program is left up to the BOP, so Petitioner's attempt to fault Counsel for any inability to participate is entirely unavailing. Indeed, given Petitioner's professed history of drug addiction and his claim that he was a "user" only, the Court fails to see how Counsel was doing anything other than providing competent representation when he explained the RDAP program to Petitioner and advised that he was a "prime candidate" for it.[9] Accordingly,

---

[9] See http://www.justice.gov/oig/reports/BOP/e0302/app1.htm (last visited October 28, 2013) ("An inmate must meet the following eligibility criteria to be admitted into RDAP: (1) sentenced to BOP custody, (2) determined by the BOP to have a substance abuse disorder, (3) sign BOP's "Agreement to Participate in the Bureau's Residential Drug Abuse Program," (4) reside in a BOP institution, (5) serving a sentence with enough time to fully participate in a residential drug abuse program, and (6) willing

the Court finds that Petitioner's claims that he felt misguided

and misrepresented, that he was unclear about the evidence

against him, and that he was coerced by Counsel into pleading

guilty with threats and promises of certain sentences,

constitute nothing more than bare-boned allegations which are

unsupported by any evidence and directly contradicted by the

record.

Petitioner's fourth argument is equally

unpersuasive as he has done nothing more than advance a

conclusory assertion that Counsel "lied" to him about his

inability to plead to a lesser drug quantity.[10] First, despite

the fact that Petitioner voluntarily agreed in his plea

agreement that his "relevant conduct" involved the distribution

of at least 5 but no more than 15 kilograms of cocaine, and,

notwithstanding his agreement with the Government's summary of

---

to participate in a residential drug abuse treatment program.
Upon successful completion of RDAP, an inmate can receive a
sentence reduction of up to 12 months, limited financial
rewards, and additional privileges within the institution.")

[10] The Court notes that in his motion, Petitioner requests "a
hearing to prove "beyond a reasonable doubt" that the weight he
pled to is accurate with his involvement. See (Doc. No. 392 at
7). The Court notes that such a hearing was already held and it
was called the change of plea hearing. Indeed, Petitioner's
admission of guilt, agreement with the Government's summary of
evidence, and drug-quantity stipulation in his plea agreement,
together constitute proof beyond a reasonable doubt that
Petitioner was involved in a conspiracy to distribute at least 5
kilograms but no more than 15 kilograms of cocaine.

16

evidence at his change of plea hearing, he maintains that he was

not responsible for the amount of cocaine he ultimately pled to.

Second, Petitioner does not even allege -- let alone provide any

evidence -- that the Government would have entertained and

accepted a stipulation to a lower-drug quantity in his case.

Indeed, Petitioner essentially is arguing that his

counsel was ineffective for failing to secure a more favorable

plea agreement with the Government, specifically, one that

included a lower drug quantity stipulation. The Court notes that

the failure to negotiate a different, more favorable plea

agreement does not generally suffice to establish ineffective

assistance of counsel. See e.g., Tanner v. United States, 2010

WL 148312, at *4 (N.D. Ind. 2010) ("The mere allegation that

counsel failed to secure a better plea agreement does not,

without more, indicate deficient counsel."); United States v.

Garcia, 413 Fed. Appx. 57, 60 (10th Cir. 2011); (Lawuary v.

United States, 199 F. Supp. 2d 866, 877 (C.D. Ill. 2002); C.f.

U.S. v. Lawson, 947 F.2d 849, 854 (7th Cir.1991) ("That Lawson

thought counsel could have negotiated a better plea does not

necessarily bear on whether the plea was knowing and

voluntary.").

Finally, although Petitioner asserts that he was told

he had to plead to the total amount of cocaine involved in the

17

conspiracy, see (Doc. No. 392 at 7), the record indicates that

he pled to a significantly smaller quantity than the total

quantity involved. Indeed, the Government represented at the

plea hearing that the total amount of weight involved in the

overall conspiracy was 24 kilograms of cocaine. See (Doc. No.

372 at 21). Thus, despite his contention to the contrary,

Petitioner did not plead to the total amount of weight involved

in the conspiracy -- just the amount he voluntarily agreed he

was responsible for.

With respect to the fifth ground identified above,

Petitioner's contention that Counsel failed to argue his

"relevant conduct" at sentencing is, again, completely belied by

the record.[11] The transcript from the sentencing hearing shows

that Counsel argued Petitioner's "relevant conduct" *at length* as

he tried to convince the Court that Petitioner was merely a

"user" and "purchaser" in the conspiracy and that a modest

---

[11] The Court also notes that Counsel was not required to raise a
meritless argument regarding the Government's failure to prove
drug quantity beyond a reasonable doubt at *sentencing*, as it is
well-established that the standard for determining drug quantity
at sentencing is by a preponderance of the evidence. See (Doc.
No. 392 at 7); United States v. Self, 681 F.3d 190, 201 (3d Cir.
2012) ("The government bears the burden of proving the weight of
the drugs involved in an offense by a **preponderance of the
evidence**.")(emphasis added); United States v. Sanders, 165 F.3d
248, 253 (3d Cir. 1999)("There can be no Sixth Amendment
deprivation of effective counsel based on an attorney's failure
to raise a meritless argument.").

18

sentence was warranted because his involvement in the conspiracy was to a much lesser degree than his co-conspirators. See (Doc. No. 373 at 5-11).[12] Counsel also made these same arguments in the sentencing memorandums he filed with the Court.

Finally, the record completely contradicts Petitioner's claim that Counsel failed to challenge the conviction in ¶ 36 of the PIR. As noted earlier, the Addendum filed by the probation officer clearly shows that it was Counsel who notified her regarding the fact that Petitioner was acquitted of that conduct, and the probation officer reduced Petitioner's criminal history points from a total of 16 to a total of 14 after receiving Counsel's notification. See (Doc. No. 303 at 2).

Thus, the factors outlined in Khattak strongly demonstrate that enforcement of the waiver would not work a

---

[12] The Court notes that after Counsel's sentencing argument, the Government objected to Counsel's characterization of Petitioner as an "end user of the product only" and detailed the evidence which established his involvement in the conspiracy as a drug-trafficker. See (Doc. No. 373 at 11). Petitioner had an opportunity to contest the Government's argument when it came time for his allocution, but he simply offered an apology for his actions, discussed his drug addiction, and asked the Court for a lenient sentence. (Id. at 14). Thus, despite being given the opportunity, Petitioner did not object to the Government's characterization of him as a drug-trafficker, nor did he take issue with the evidence that was cited in support of that conclusion.

19

miscarriage of justice, as Petitioner cannot even establish that Counsel provided any erroneous advice or ineffective assistance. Even if Counsel had somehow provided ineffective assistance, Petitioner has not even alleged how he was prejudiced by any alleged ineffectiveness.

In this Court's estimation, it appears that Petitioner received a sentence which was more severe than he expected and he has asserted these bare-boned and meritless allegations in an attempt to withdraw his plea and receive another bite of the apple by trying to negotiate a plea to a lower drug quantity. Even assuming a clear error on the part of Counsel -- which there was not -- the other factors still strongly show that no miscarriage of justice would result from enforcing the waiver. Indeed, the Government would be greatly prejudiced by having to try a case that is now years old and in which it relied on Petitioner's cooperation to secure the pleas of his co-defendants. Issues of immunity could now potentially muddy any subsequent trial.

Additionally, Petitioner acquiesced in any alleged error. Indeed, his over-arching contention is the drug quantity to which he pled, however, Petitioner voluntarily agreed that he was responsible for the 5-15 kilogram quantity and he voluntarily entered into the plea agreement notwithstanding his

knowledge that it failed to contain a lower drug quantity
stipulation. Furthermore, Petitioner was given an opportunity
to personally contest the Government's evidence regarding
quantity at his plea and sentencing hearings and did not do so.

Moreover, the Court notes that whatever statements his
Counsel may have made regarding his sentence was cured by the
Court's colloquy.[13]  Indeed, the Court, at the plea hearing,
advised Petitioner of his sentencing exposure under the statute
and also advised him that the Sentencing Guidelines would only
be advisory to the Court, that the Court could sentence him
outside of the recommended guideline range, and that the Court
would not be able to determine his advisory guideline range
until after a presentence report had been prepared and he and
the Government had an opportunity to challenge it.  Furthermore,
the Court specifically informed Petitioner that he would have no
right to withdraw his plea if his sentence was more severe than
he expected, and he answered that he understood. Thus, any
alleged "misinformation" Petitioner may have received regarding
the sentence he faced from his attorney, and, again, there does
not appear to have been any, such error was cured by the Court's
colloquy.  See United States v. Shedrick, 493 F.3d 292, 299 (3d

[13] Again, the record shows that Counsel did not make any threats
or promises regarding Petitioner's sentence, and Petitioner has
not come forward with any credible evidence to conclude
otherwise.

21

Cir. 2007); United States v. Jones, 336 F.3d 245, 254 (3d Cir. 2003); United States v. Mustafa, 238 F.3d 485, 492 (3d Cir. 2001).

In sum, the record clearly demonstrates that Petitioner knowingly and voluntarily waived his right to collaterally attack his sentence and that no miscarriage of justice will occur if the waiver is enforced. The Court's independent review of the record reveals nothing to the contrary.

Accordingly, Petitioner's motion is dismissed. Moreover, because Petitioner waived his right to file any such motion, and because all of his claims[14] are unsupported and contradicted by the record, there is no basis for issuing a certificate of appealability, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

An appropriate Order will be issued.

Dated: January 2, 2014          s/Alan N. Bloch
                                United States District Judge

---

[14] The Court notes that, although it discussed the underlying merits of Petitioner's claim, it did so only in the context of considering the Khattak factors and determining that enforcement of the waiver would not work a miscarriage of justice.

22

ecf:     Counsel of record

cc:      Richard Scott Blackstone, #33238-068
         FCI McDowell
         P.O. Box 1009
         Welch, WV 24801